**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re<br><br>FTX TRADING LTD, *et al.*,[1]<br><br>      Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LTD. and<br>CLIFTON BAY INVESTMENTS LLC f/k/a<br>ALAMEDA RESEARCH VENTURES LLC,<br><br>      Plaintiffs,<br><br>v.<br><br>MICHAEL KIVES, BRYAN BAUM, K5<br>GLOBAL HOLDINGS LLC, K5 GLOBAL<br>TECHNOLOGY LLC, MBK CAPITAL LP<br>SERIES T, K5 GROWTH CO-INVEST I GP<br>LLC, K5 GLOBAL GROWTH FUND I GP<br>LLC, K5 GLOBAL VENTURES LLC,<br>MOUNT OLYMPUS CAPITAL LP,<br>MOUNT OLYMPUS CAPITAL LLC, K5<br>GLOBAL GROWTH FUND II LP, K5<br>GLOBAL GROWTH FUND II GP LLC,<br>K5X FUND I LP, K5X FUND I LLC, and<br>SGN ALBANY LLC,<br><br>      Defendants. | Adv. Pro. No. 23-50411 (JTD) |

**K5 DEFENDANTS' MOTION TO STAY ADVERSARY PROCEEDING PENDING**
**CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN AND**
**MEMORANDUM OF LAW IN SUPPORT**

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases (the "Debtors"), a complete list of Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Case 23-50411-JTD    Doc 38    Filed 09/11/23    Page 2 of 25

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................................................1

BRIEF STATEMENT OF RELEVANT FACTS..................................................................6

    A.    Debtors' Chapter 11 Proceedings ............................................................6

    B.    The United States Trustee's Motion for Appointment of Examiner.......................8

    C.    The Instant Adversary Proceeding ...........................................................8

RELIEF REQUESTED..........................................................................................................13

BASIS FOR RELIEF REQUESTED ....................................................................................13

NOTICE OF REQUESTED RELIEF ...................................................................................18

CONCLUSION......................................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

**CASES**                                                                                          **Page**

*In re Bird*,
     229 B.R. 90 (Bankr. S.D.N.Y. 1999).........................................................................13

*In re Brantley*,
     Case No. 16-8002, 2016 WL 3003429 (Bankr. M.D. Ala. May 17, 2016) ...........................13

*In re HH Liquidation, LLC*,
     590 B.R. 211 (Bankr. D. Del. 2018) ......................................................................11

*Landis v. N. Am. Co.*,
     299 U.S. 248 (1936)..........................................................................................13

Defendants Michael Kives, Bryan Baum, K5 Global Holdings, LLC, K5 Global Technology, LLC, MBK Capital, LP - Series T, K5 Global Growth Co-Invest I GP, LLC, K5 Global Growth Fund I GP, LLC, K5 Global Ventures, LLC, Mount Olympus Capital, LP, Mount Olympus Capital, LLC, K5 Global Growth Fund II, LP, K5 Global Growth Fund II GP, LLC, K5X Fund I, LP, and K5X Fund I, LLC (collectively, the "K5 Defendants"), defendants to the above-captioned adversary proceeding (the "Adversary Proceeding"), file this motion and memorandum of law (the "Motion") for entry of an order staying the Adversary Proceeding pending the Court's confirmation of Debtors' Chapter 11 Plan.[2]  In support of this Motion, the K5 Defendants state the following:

## **INTRODUCTION**

On August 18, 2023, the Official Committee of Unsecured Creditors (the "UCC") expressed concern about Debtors pursuing "needless," "costly," and "time-consuming litigation" that contributes to Debtors' "seemingly limitless administrative burn rate."  *See* Emergency Mot. of UCC for Entry of an Order Compelling Mediation of Ch. 11 Plan & Other Case Issues ("UCC Mediation Motion") at 2–3, D.I. 2212.  That was not the first time the UCC had criticized Debtors' lack of cooperation in favor of "unilateral" action.  *See* Statement of UCC in Respect of the Debtors' Draft Plan of Reorganization & Accompanying Term Sheet ("UCC Statement")  at ¶¶ 1, 5, D.I. 2103.  This Adversary Proceeding, however, is another paradigmatic example of Debtors wasting estate resources on costly litigation that is not yet ripe and should at a minimum have been

---

[2] While negotiating the schedule for this case in connection with the joint Case Management Plan and Scheduling Order, the K5 Defendants asked Plaintiffs to stipulate to a stay for the reasons discussed herein.  Plaintiffs refused.  *See* Declaration of James E. Brandt ("Brandt Decl."), ¶¶ 3, 5, Ex. 2.

deferred until after the parties were able to consider fully whether an out-of-court resolution could be reached.

The issues at hand regard the $700 million Plaintiffs[3] invested in and with the K5 Defendants pursuant to the parties' May 2022 transaction. SGN Albany Capital LLC ("SGN"), a shell entity created by Sam Bankman-Fried ("SBF"), and which Plaintiffs allege is controlled by the same FTX insiders that controlled them, is the nominal owner of the investments. The K5 Defendants have repeatedly made clear to Plaintiffs that they had no objection to Plaintiffs taking steps to confirm their ownership over the assets and investments at issue by obtaining an order from this Court in a proceeding that presumably would be unopposed and that need not involve the K5 Defendants. Moreover, the K5 Defendants have made clear that, upon the Plaintiffs obtaining that order, they would assist in maximizing the value of the investments for the benefit of the estates, and assist in monetizing them if desired and appropriate.

Despite those overtures, and after a single meeting between representatives of the parties, Plaintiffs without any warning inexplicably launched this expensive, wasteful, and unnecessary lawsuit to pursue goals that could have been pursued more effectively and cost-efficiently out of court. Recent events make clear that this dispute is premature, and at minimum that a stay is warranted to ensure that the parties do not continue to waste resources litigating on the basis of facts that are rapidly changing and may easily moot or defeat Plaintiffs' claims.

First, Plaintiffs' pending motion for a default judgment against SGN is poised to impact key facts underlying this litigation. In the Complaint, Plaintiffs claim that they invested

---

[3] As set forth in the concurrently filed *K5 Defendants' Motion to Dismiss Plaintiffs' Complaint* ("Motion to Dismiss"), the Complaint alleges that Alameda Ventures never had a property interest in the amount it purportedly transferred. Thus, according to the Complaint's allegations, it is not a proper Plaintiff. *See* K5 Defs.' Mot. Dismiss at 16–18.

$700 million in and with the K5 Defendants, but that SGN and not Plaintiffs received the overwhelming majority of the value from that investment.  Plaintiffs named SGN as a defendant in the Adversary Proceeding, under the guise that SGN is a separate entity from Plaintiffs.  That appears to be, of course, a fiction.  Plaintiffs themselves allege that SBF failed utterly to follow any corporate formalities with respect to the entities he controlled.  Compl. ¶ 9, Adv. Pro. D.I. 1. And Plaintiffs plead that SGN, like Plaintiffs, is controlled and owned by SBF and that the same other FTX insiders have a minority stake—the only difference being that SGN purportedly is 8.33% owned by one of the two Plaintiffs.  To no one's surprise, "SGN" failed to appear or respond to Plaintiffs' Complaint by SGN's August 21, 2023 deadline, and Plaintiffs promptly sought a default judgment.  However this Court responds to that gambit, there is little question that Plaintiffs will enjoy the value of their $700 million investment.

Second, Plaintiffs' sworn statements respecting potentially pivotal facts underlying their claims continue to rapidly evolve.  Over the course of the last six months, Plaintiffs have each filed several Summaries of Assets and Liabilities for Non-Individuals (Official Form206Sum) ("SOALs") certifying their assets and liabilities as of November 11, 2022 (the "Petition Date"), under penalty of perjury.  Prior to the filing of the Complaint, Plaintiff Clifton Bay Investments LLC f/k/a Alameda Research Ventures LLC ("Alameda Ventures") attested that, as of the Petition Date, it had $995,874,809.74 in total determined assets, with $0.00 in determined liabilities, and Plaintiff Alameda Research Ltd. ("Alameda Research") attested that it had $1,117,704,972.25 in total determined assets, with only $298,445.86 in determined liabilities.  *See* K5 Defs.' Request for Judicial Notice Supp. Mot. Dismiss ("RJN") ¶¶ 6–7, Ex. F at 27 (03/15/2023 Alameda Research SOALs); Ex. G at 27 (03/15/2023 Alameda Ventures SOALs).  On July 31, 2023, Plaintiffs filed unredacted versions of their original SOALs affirming that they possessed the same amounts of

assets and liabilities on the Petition Date as in their March 15, 2023 SOALs.  *See id.* ¶¶ 8–9, Ex. H at 29 (07/31/2023 Alameda Research SOALs); Ex. I at 29 (07/31/2023 Alameda Ventures SOALs).

On August 31, 2023, however, shortly before the K5 Defendants' response to Plaintiffs' Complaint was due, Plaintiffs filed updated SOALs which suddenly and dramatically altered the determined assets and liabilities for each Plaintiff, largely as the result of a newly identified $1.46 billion intercompany receivable supposedly owed by one Plaintiff, Alameda Ventures, to the other, Alameda Research.  *See id.* ¶¶ 10–11, Ex. J at 29, 45 (08/31/2023 Alameda Research SOALs); Ex. K at 29, 49 (08/31/2023 Alameda Ventures SOALs).  Plaintiff Alameda Research continues to attest to its solvency, while Plaintiff Alameda Ventures—which appears in any event to be an improper plaintiff—now claims to be insolvent by approximately $500 million, largely on the basis of its purported intercompany obligation to Alameda Research.  *See id.*  Notably, neither Plaintiff's SOALs account for the value of its investments with or in the K5 Defendants, or Plaintiffs' pending motion for a default judgment against SGN.  And Plaintiffs ignore the fact that the newfound intercompany claims on which they rely are slated to be canceled under the draft plan of reorganization, which means, among other things, that there would be no impaired creditors at Alameda Ventures despite its nominal alleged insolvency.  *See id.*, Ex. K at 49–51 (listing only intercompany receivables as "determined" liabilities); *see also id.*, Ex. N (Debtors' 07/31/2023 Draft Plan of Reorganization – Term Sheet).  Because Plaintiffs' actual insolvency is essential to their primary claims, Plaintiffs' rapidly evolving view of their assets and liabilities—predicated

on opaque intercompany transactions that continue to "emerge" and which are slated to be canceled—underscores that litigation premised on those facts is overwhelmingly premature.[4]

Finally, events in the broader bankruptcy proceeding make clear that rushing to spend resources on this case is unwarranted. The Third Circuit has taken up the United States Trustee's appeal of this Court's denial of the appointment of an examiner which, if successful, could cause duplicative discovery efforts, and critical witnesses to this dispute are unavailable due to upcoming criminal trials. Put simply, proceeding with this Adversary Proceeding now threatens to generate unnecessary fees and expenses, while benefiting no one other than those that stand to gain from the associated "administrative burn rate." While plaintiffs customarily would agree to such a stay—particularly in a case where the plaintiffs are expected to be awarded title over the subject of the suit—*these* Plaintiffs are unwilling to respond until all parties have incurred the significant costs associated with court intervention.[5]

For all of the above reasons, absent Plaintiffs' agreement prior to the hearing on this Motion, the Court should stay this Adversary Proceeding. Discovery should in any event be stayed until Plaintiffs can establish that they can actually state a claim for relief, which they have not for the reasons stated in the K5 Defendants' concurrently filed Motion to Dismiss.

---

[4] As set forth in the K5 Defendants' concurrently filed Motion to Dismiss, the uncertain, evolving, and contingent nature of Plaintiffs' assertions regarding their solvency renders Plaintiffs' claims unripe and necessitates dismissal. At a minimum, however, it counsels in favor of a stay. *See* K5 Defs.' Mot. Dismiss at 18 n.15.

[5] The K5 Defendants do not argue that filing a motion to dismiss or to withdraw the reference, standing alone, justifies a stay. But the pendency of those motions provides additional context militating in favor of a stay given the other considerations addressed in this Motion.

## BRIEF STATEMENT OF RELEVANT FACTS

### A.    Debtors' Chapter 11 Proceedings

1.    The lead Debtor in these Chapter 11 proceedings (the "Chapter 11 Cases"), FTX Trading Ltd., was founded and operated by SBF as one of the world's largest cryptocurrency exchanges, FTX.com.  Debtors also include Plaintiffs Alameda Research and Alameda Ventures (together, "Plaintiffs").

2.    Prior to November 2022, FTX.com was widely believed to be remarkably successful.  That changed in November 2022, when FTX.com suddenly and shockingly collapsed. Nearly all of the FTX.com's principals, including SBF, have been criminally prosecuted in connection with the collapse.[6]

3.    Prior to the initiation of the Chapter 11 Cases on or around the Petition Date, Debtors appointed John J. Ray III ("Ray") as their interim CEO.  Ray has worked closely with the law firm Sullivan & Cromwell LLP, which has represented Debtors throughout the pendency of their bankruptcy.

4.    Debtors filed a draft Chapter 11 plan (the "Draft Plan," and such plan or any other Chapter 11 plan that may be proposed, the "Chapter 11 Plan") on July 31, 2023.  *See generally* RJN, Ex. N.  The Draft Plan proposed a classification of claims and interests and an initial construct for a global settlement.  Among other things, the Draft Plan proposed that all intercompany claims

---

[6] FTX insiders Zixao "Gary" Wang, Nishad Singh, Caroline Ellison, and Ryan Salame have all pleaded guilty to multiple felonies.  *See United States v. Bankman-Fried, et al.*, Case No. 1:22-cr-00673-LAK, ECF Nos. 19, 21, 102; *see also* Min. Entry Sep. 7, 2023.  SBF has not, and his criminal trials are scheduled for October 2, 2023 and March 11, 2024.  *See id.*, ECF No. 165; *see also id.*, Min. Entry Jan. 3, 2023.  SBF has already indicated in another proceeding that he will not respond to discovery requests, invoking his Fifth Amendment right against self-incrimination.  *See* Mot. Quash Subpoena, *In re Rule 45 Subpoena to Non-Party Samuel Bankman-Fried*, Case No. 3:23-mc-80052, ECF No. 1 (N.D. Cal. Feb. 21, 2023) ("SBF Motion to Quash").

would be "canceled, released, or otherwise settled in full" pursuant to a "Global Settlement" without any distributions. *Id.* at 27. It also included a term sheet that provided for a joint plan for most of Debtors, aside from "separate subsidiaries" that are "historically solvent," which would be excluded from the Chapter 11 Plan. *Id.* at 2, 4. Debtors did not identify which entities comprise those "separate subsidiaries."

5.      The Draft Plan caused uproar amongst Debtors' stakeholders, and in particular, the UCC. The UCC filed a statement claiming that Debtors had promised to negotiate with them regarding any draft plan but failed to do so, even though the UCC had made "repeated requests" to meet in the weeks leading up to the Draft Plan's filing. UCC Statement ¶¶ 1–2. In a later filing, the UCC claimed that, had Debtors merely worked with the UCC in good faith, they could have "saved at least a month of time to advance these cases." UCC Mediation Motion ¶ 5.

6.      Rather than address the UCC's concerns, Debtors filed a response proclaiming "numerous factual inaccuracies and baseless allegations." *Id.* ¶ 1 n.3. The UCC countered by filing a motion to mediate the issues raised by the Draft Plan on August 18, 2023, alerting the Court to Debtors' "seemingly limitless administrative burn rate on creditor recoveries," which had resulted in more than $320 million in professional fees through June 2023. *See generally id.* In its motion, the UCC expressed frustration that Debtors had needlessly "fractured" the relationship between the parties, acting in a manner likely to lead to "costly and time-consuming litigation"; indeed, it noted that Debtors have continued to refuse to meet for substantive negotiations, choosing instead an adversarial posture that only further adds to the estate's "daily burn rate of over $1.5 million." *Id.* ¶¶ 1, 5.

7.     Only after the UCC made its concerns public and sought an order from this Court did Debtors agree to meetings with the UCC—meetings that should have commenced months before their September start date.

**B.     The United States Trustee's Motion for Appointment of Examiner**

8.     On December 1, 2022, the United States Trustee (the "UST") filed a motion (the "Examiner Motion") to appoint an examiner to "investigate the substantial and serious allegations of fraud, dishonesty, incompetence, misconduct, and mismanagement by Debtors, the circumstances surrounding Debtors' collapse, the apparent conversion of exchange customers' property, and whether colorable claims and causes of action exist to remedy losses."  Examiner Motion at 2, D.I. 176.

9.     Should an examiner be appointed, such individual would likely be authorized to investigate allegations of fraud, irregularity, or misconduct in the affairs of both Plaintiffs.

10.     This Court denied the Examiner Motion on February 15, 2023.  *See* Feb. 15, 2023 Min. Entry, D.I. 732; Order Denying Mot. Appointment of an Examiner, D.I. 746.  The UST appealed the denial on March 6, 2023 and sought direct certification of the appeal to the Third Circuit.  *See* Notice of Appeal, D.I. 805; Mot. Request for Cert. of Direct Appeal to Circuit Ct., D.I. 1142.  The Third Circuit granted the request for direct certification on July 19, 2023.  *See* Order from Circuit Ct. Re: Appeal, D.I. 1142.  Briefing for the appeal is scheduled to be complete on October 16, 2023, with argument before the "next available panel" soon thereafter.  *See* Order re Mot. Expedite Appeal at 1, *In re FTX Trading, Ltd., et al.*, Case No. 23-2297, Dkt. No. 21 (3d Cir. Aug. 1, 2023).

**C.     The Instant Adversary Proceeding**

11.     Notwithstanding the sworn solvency of several Debtors, including at least one of the Plaintiffs, Debtors have filed a number of adversary proceedings seeking to recover allegedly

fraudulent or preferential transfers. *See, e.g.*, *Alameda Rsch. Ltd., et al. v. Rocket Internet Cap. Partners II SCS, et al.*, Adv. Pro. 23-50379-JTD; *Alameda Rsch. Ltd., et al. v. Giles, et al.*, Adv. Pro. 23-50380-JTD; *Alameda Rsch. Ltd., et al. v. Bankman-Fried, et al.*, Adv. Pro. 23-50381-JTD; *Alameda Rsch. LLC, et al. v. Friedberg*, Adv. Pro. 23-50419-JTD; *FTX Trading Ltd., et al. v. Lorem Ipsum UG, et al.*, Adv. Pro. 23-50437-JTD; *Alameda Rsch. Ltd., et al. v. Platform Life Scis., et al.*, Adv. Pro. 23-50444-JTD; *FTX Trading Ltd., et al. v. Bankman-Fried, et al.*, Adv. Pro. No. 23-50448-JTD; *FTX Trading Ltd., et al. v. LayerZero Labs Ltd., et al.*, Adv. Pro. 23-50492-JTD. The K5 Defendants were swept up in this litigation frenzy when Plaintiffs filed suit against them on June 22, 2023. *See generally* Compl.

12.      Prior to filing the Complaint, Plaintiff Alameda Ventures had attested under penalty of perjury that, as of the Petition Date, it had $995,874,809.74 in total determined assets, with $0.00 in determined liabilities, and Plaintiff Alameda Research attested that it had $1,117,704,972.25 in total determined assets, with only $298,445.86 in determined liabilities. *See* RJN, Ex. F at 27; Ex. G at 27.

13.      On July 31, 2023, Plaintiffs filed unredacted versions of their original SOALs in which they swore that they possessed the same amounts of assets and liabilities as in their March 15, 2023 SOALs. *See id.*, Ex. H at 29, 45; Ex. I at 29, 49.

14.      On August 31, 2023, shortly before the K5 Defendants' deadline to respond to the Complaint, Plaintiffs again filed updated SOALs, but this time significantly altered the determined assets and liabilities for each Plaintiff, largely to layer in the purported intercompany claims the Chapter 11 Draft Plan proposed to cancel.   A newly identified $1.46 billion intercompany receivable is now supposedly owed by one Plaintiff, Alameda Ventures, to the other, Alameda Research. *See id.*, Ex. J at 29, 45; Ex. K at 29, 49.

15.     Nonetheless, and regardless of these recent machinations, Plaintiff Alameda Research continues to attest to its solvency, with $9,581,882,669.53 in determined assets and $9,562,203,055.66 in determined liabilities—making it solvent by nearly $20 million. *See id.*, Ex. J at 29. Plaintiff Alameda Ventures, on the other hand, now swears to its insolvency by approximately $500 million (with its determined liabilities of $1,543,089,018.58 exceeding its determined assets of $1,045,553,839.38), based primarily on the supposed $1.46 billion intercompany obligation to its co-Plaintiff Alameda Research.[7] *See id.*, Ex. K at 29, 49.

16.     Of course, assuming Plaintiffs' formal declaration of ownership of the SGN assets is established in the days following the filing of this Motion, the significant value of that investment, which currently does not appear as an asset on either Plaintiff's SOALs,[8] will be added to Plaintiffs' balance sheets.[9] Accordingly, regardless of the purported intercompany obligation, Plaintiff Alameda Ventures should be solvent shortly after the filing of this Motion.

17.     Concurrently with this Motion, the K5 Defendants have filed a Motion to Dismiss the Adversary Proceeding. The allegations against the K5 Defendants are more fully described in that motion. As relevant to this Motion, Plaintiffs allege that they transferred $700 million to the K5 Defendants in connection with: (1) SGN's acquisition of a 1/3 equity interest in all of

---

[7] As the K5 Defendants discuss more thoroughly in their Motion to Dismiss, Alameda Ventures is not a proper plaintiff based on the facts pled in the Complaint. *See* K5 Defs.' Mot. Dismiss at 16–18.

[8] In addition, Plaintiff Alameda Research mysteriously "lost" over 30 pages of cryptocurrency worth an "undetermined" value. *Compare* RJN, Ex. H at 46–75, *with id.*, Ex. J at 45–46. Alameda Research also treats its cryptocurrency assets as "undetermined" in its SOALs, despite Debtors attributing billions of dollars in value to those assets in their 'case updates.'" *Compare* RJN, Ex. J at 45–46, *with id.*, Ex. M at 2.

[9] The default order purports to grant ownership to the Plaintiffs "jointly and severally." *See* Proposed Order for Default J. at 2, Adv. Pro. D.I. 23-1. Although Black's Law Dictionary provides that "joint and several" describes liabilities, not assets, presumably the Plaintiffs mean to assert ownership akin to a joint tenancy.

Defendants Kives and Baum's existing general partnerships ("GPs") and certain investment holding companies, along with two GPs of newly created investment funds; and (2) interrelated investments in the new investment funds. *See* Compl. ¶¶ 7, 62–89. They also allege that SBF created SGN as a shell company to provide the investment funds. *See, e.g.*, *id.* ¶¶ 8, 35. As a result of the underlying transaction, SGN nominally "owns" a 1/3 interest in many K5 entities and the right to carried interest in the investment funds, as well as a limited partnership interest in a newly created investment fund.

18.     To even have standing to assert the majority of Plaintiffs' claims in this Adversary Proceeding, the Plaintiffs must be insolvent such that their creditors, not Debtors, may benefit from the action. *See In re HH Liquidation, LLC*, 590 B.R. 211, 262 (Bankr. D. Del. 2018) ("Fraudulent transfer claims may not be bought where they offer no benefit to creditors of the transferor's estate."). Moreover, with respect to the constructive fraudulent conveyance claims and preferences, Plaintiffs must establish that they were insolvent at the time of the transfers. *See* Compl. ¶¶ 113, 118, 134, 141, 150. As discussed above, they are unable to do so.

19.     Although SGN shares a similar ownership structure to every other SBF-owned entity, Plaintiffs chose not to include it in the Chapter 11 proceedings and instead sued it as a defendant in this action—a bizarre bit of legal fiction that serves through the negative publicity generated by the suit only to undermine the value of assets for which Plaintiffs now seek clear title via Plaintiffs' motion for default judgment (the "Default Motion"). *See generally* Default Motion, Adv. Pro. D.I. 23. Resolution of that Default Motion will have substantial implications for the fundamental claim underlying Plaintiffs' Complaint that Plaintiffs do not enjoy the value of their investments with or in the K5 Defendants.

20.     Debtors have acted towards the K5 Defendants in the same wasteful, inefficient manner that they have towards the UCC.  For example, the K5 Defendants have repeatedly informed Plaintiffs that there are alternative (and less expensive) paths to recovering SGN's investments, aside from a lawsuit.  The K5 Defendants have always been clear with Debtors, including in writing, that they do not object to Plaintiffs confirming their ownership over SGN's assets, and they have openly expressed willingness to cooperate with Plaintiffs to the extent they seek to clarify title.[10]  *See* Brandt Decl. ¶¶ 2–4, Ex. 1.  Plaintiffs thus could have realized relief with respect to the investments at issue in this Adversary Proceeding without the litigation expense—which now covers four additional motions.

21.     Instead, after a single meeting between the parties and without warning, Plaintiffs filed their Complaint.  Nonetheless, the K5 Defendants continued to offer Plaintiffs a path towards efficiently resolving this matter simply by determining the proper ownership of SGN's assets. Indeed, prior to filing this Motion, the K5 Defendants asked Plaintiffs to stipulate to a stay so that discussions could proceed without continued litigation.  *See* Brandt Decl. ¶¶ 3, 5, Ex. 2.  Instead, Plaintiffs filed the Default Motion.  While the K5 Defendants did not oppose the Default Motion, their continued efforts to discuss an efficient pathway forward have not yet born fruit.

22.     On August 17, 2023, the K5 Defendants filed their *Motion to Withdraw the Reference* of the Adversary Proceeding ("Motion to Withdraw the Reference").  *See* Adv. Pro. D.I. 17.  Plaintiffs immediately sought a three-week extension of time to respond.  *See* Brandt

---

[10] Pursuant to the Draft Plan's term sheet, the surviving historically solvent corporate entity or entities will continue to own relevant venture capital assets following confirmation of the Chapter 11 Plan.  *See* RJN, Ex. N at 4.  As that further underscores, there is little urgency to Plaintiffs' Complaint because the Draft Plan's term sheet itself envisions a path for Plaintiffs to own the assets at issue following confirmation of the Chapter 11 Plan, if that is their ultimate choice.  *Id.*

Decl. ¶ 6, Ex. 3.  The district court's resolution of that motion will determine whether and to what extent this matter proceeds before this Court.

23.     On September 11, 2023, concurrently with filing this motion, the K5 Defendants filed a Motion to Dismiss the Complaint.  Pursuant to the parties' stipulation and this Court's order, briefing on the Motion to Dismiss will be complete as of December 11, 2023.  *See* Stip. Proposed Case Mgmt. Plan & Sch. Order at 2, Adv. Pro. D.I. 28.

**RELIEF REQUESTED**

24.     The K5 Defendants respectfully request that this Honorable Court stay the Adversary Proceeding pending confirmation of Debtors' Chapter 11 Plan, which would benefit the parties to this Adversary Proceeding, Debtors' creditors, and the Court itself.

**BASIS FOR RELIEF REQUESTED**

25.     "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  This power extends to adversary proceedings, and "if an adversary proceeding [is] premature, the court may defer adjudication."  *In re Bird*, 229 B.R. 90, 95 (Bankr. S.D.N.Y. 1999).  After all, "[i]t makes little sense to wast[e] scarce judicial resources in attempts to resolve speculative or indeterminate factual issues."  *In re Brantley*, Adv. Pro. No. 16-8002-WRS, 2016 WL 3003429, at *3 (Bankr. M.D. Ala. May 17, 2016) (internal quotation omitted).

26.     This Adversary Proceeding, like so many of Debtors' tactics in the broader bankruptcy proceedings, is an "empty gesture" that amounts to a waste of resources and time.

27.     To begin with, Plaintiffs filed this Adversary Proceeding prematurely.  There are myriad outstanding issues that must be resolved before Plaintiffs could proceed with this litigation:

- First, Plaintiffs recently moved for a default judgment against SGN, pursuant to which they seek a judgment assignment to them all of the valuable rights and interests that SGN acquired as a result of the K5 Transaction. Default Motion ¶ 8. Should that relief be granted, it will fundamentally reshape this action, which is premised on Plaintiffs *not* having received reasonably equivalent value from the K5 Transaction.

- Second, and more fundamentally, the uncertain and evolving nature of Plaintiffs' claims regarding their own solvency renders this entire suit premature. Plaintiffs' primary claims all require Plaintiffs to demonstrate insolvency. Yet, Plaintiffs swore under penalty of perjury prior to filing the Complaint that they were solvent on the Petition Date. Even as of August 31, 2023, Plaintiff Alameda Research continued to attest to its solvency under penalty of perjury. RJN, Ex. J at 29. By contrast, Plaintiff Alameda Ventures—which based on the Complaint is not even a proper plaintiff—for the first time purported to assert that it was insolvent by $500 million as of the Petition Date, largely on the basis of a previously unasserted intercompany obligation—an obligation that the Debtors plan to eliminate, and with it any impaired creditor. RJN, Ex. K at 29, 49; *id.* Ex. N at 27.

- At a minimum, the evolving and entirely uncertain nature of Plaintiffs' purported solvency renders this case premature. Had this Court adjudicated a motion to dismiss immediately upon the filing of the Complaint, any of Plaintiffs' claims based upon their insolvency necessarily would have failed, in light of Plaintiffs' sworn attestation at the time of filing the Complaint to their solvency as of the Petition Date. Today, having attested to its solvency, the only viable Plaintiff would have to be dismissed. Further, even if Alameda Ventures survives dismissal on the basis that it actually has a property

interest in the transferred money, it would then be at risk of dismissal after the resolution of Plaintiffs' pending Default Motion, or after the Debtors eliminate the intercompany claims that are now the basis of Alameda Ventures' nominal insolvency. And matters may be even more different still a month or several months from now as Plaintiffs' claims regarding their assets and liabilities continue to evolve. It makes little sense to spend the parties' (and this Court's) resources to litigate those claims while fundamental predicate facts without which Plaintiffs' claims cannot go forward cannot even be fairly alleged, let alone established.

- Third, the Third Circuit's coming resolution of the UST's appeal from this Court's denial of the Examiner Motion may have important implications for any claims that survive the Motion to Dismiss. Should the parties engage in extensive discovery only for the Third Circuit to reverse this Court and appoint an examiner, the parties will have wasted (yet more) resources. The UST intends for the examiner to investigate SBF's fraud and any causes of action resulting therefrom. In so doing, the UST has proposed that the examiner investigate allegations of misconduct or mismanagement in Debtors' affairs or by Debtors' management. To the extent that the examiner's investigation could encompass certain facts bearing on Plaintiffs' claims, it makes little sense to allow Plaintiffs to duplicate discovery and pursue litigation in advance of the resolution of that investigation. The Third Circuit has accelerated consideration of the UST's appeal from this Court's denial of the Examiner Motion. Briefing is scheduled to be completed in mid-October, with oral argument to follow expeditiously. A stay to permit for the resolution of that appeal will preserve the parties' resources in the event

that the Third Circuit orders the appointment of an examiner and the examiner's investigation encompasses facts at issue in Plaintiffs' Complaint.

- Key witnesses may also be unavailable for trial in this case. For example, SBF himself is currently facing criminal prosecution, with jury trials scheduled for October 2023 and March 2024. He is therefore almost certain to be unavailable in this matter until at least April 2024, and indeed, has already invoked his Fifth Amendment rights in another proceeding. *See* SBF Motion to Quash ¶ 1. It will be nearly impossible to litigate issues of fraudulent transfer, including critical matters such as intent, alter ego, and breaches of fiduciary duties, without obtaining testimony from the man at the top of Debtors' house of cards.

- The K5 Defendants' Motion to Withdraw the Reference is currently being considered by the District Court. Should the District Court grant that motion, any preliminary proceedings that the parties engage in now may have to be reviewed *de novo* after withdrawal, which would be a needless waste of resources.

- Finally, as evidenced by the "war of words" between Debtors and the UCC, any Chapter 11 Plan is far from being finalized. UCC Mediation Motion ¶ 1 n.3. Further, no distributions will be made to creditors until this Court confirms a plan. Accordingly, no creditors will be harmed should this matter be stayed in the interim.

28. On the other hand, Plaintiffs' insistence on prosecuting this Adversary Proceeding may very well *harm* their creditors. By engaging in "needless litigation," they are contributing to the "administrative burn" of these proceedings, which can only reduce "creditor recoveries." *Id.* ¶ 1. Indeed, nearly all of the issues that have frustrated the UCC throughout the Chapter 11 Cases are also present here:

- In lieu of good-faith negotiations, Plaintiffs have repeatedly chosen to blindside parties with whom they should be cooperating.  They filed this Adversary Proceeding with no warning, and *after K5 Defendants had offered to cooperate in ensuring Plaintiffs are able to obtain ownership over assets over which they can stake dominion without involving the K5 Defendants, and which the K5 Defendants offered to cooperate in helping Plaintiffs to monetize*.  This unilateral action parallels Debtors' ongoing resistance to the UCC's requests for cooperation in making the bankruptcy proceedings more efficient, and instead typifies Debtors' wasteful approach across the broader proceedings.

- Rather than proceed in a manner that preserves the *corpus* of the estates, Debtors undertake actions that undermine it, while incurring enormous fees in doing so.  This litigation is just one example.  Plaintiffs have brought an unnecessary (or, at best, premature) Complaint, on which the parties are now gearing up for expensive motion practice and litigation—to the obvious detriment of the estate's creditors.

- Debtors ignore offers to amicably resolve disputes, choosing instead to malign their counterparties in ways that can only harm any eventual creditor recovery.

29.     The K5 Defendants should not be forced at this time to litigate this case, which was brought prematurely and for relief much more sensibly obtained without involving the K5 Defendants.  For the reasons discussed above, the K5 Defendants urge this Court to allow the Chapter 11 process to play out before this case continues.  To the extent that Plaintiffs' claims turn on establishing their insolvency—despite their sworn statements to the contrary—it is premature for this action to continue unless and until Plaintiffs can point to a resolution of matters in Chapter 11 in order to even attempt such a claim.

30.     Other matters likewise should be resolved.   The Third Circuit must determine whether this Court correctly denied the Examiner Motion, SBF must be available to testify in this matter, and the K5 Defendants' Motion to Withdraw the Reference must be resolved before this case can be meaningfully litigated.  As it stands, this lawsuit will burn millions of dollars of estate assets on the basis of claims—many of which are dead on arrival based on Debtors' own sworn statements.   Accordingly, there seems to be little apparent purpose to litigating this case now, particularly given the K5 Defendants' willingness to work amicably with Plaintiffs towards a value-efficient resolution.

31.     To the extent that any issues remain after resolution of the above issues and the K5 Defendants' pending Motion to Dismiss, those issues can then be litigated.  But there is no need to allow this expensive and counterproductive litigation to go forward now.

32.     Therefore, the K5 Defendants respectfully ask this Court to stay the Adversary Proceeding in its entirety pending confirmation of a Chapter 11 Plan.[11]

## NOTICE OF REQUESTED RELIEF

33.     Notice of this Motion has been given to counsel for Plaintiffs.

## CONCLUSION

For the foregoing reasons, the K5 Defendants respectfully request that the Court enter an order staying the Adversary Proceeding pending this Court's confirmation of a Chapter 11 Plan.

*[Remainder of page intentionally left blank]*

---

[11] Alternatively, should the Court find that such a stay is not warranted, it should at least stay the Adversary Proceeding pending resolution of the K5 Defendants' Motion to Dismiss.  At that time, the UST's appeal in connection with the Examiner Motion will likely have been resolved, and the Court will have narrowed the claims in dispute, if any survive, rendering any discovery in this action far more efficient.

Dated:  September 11, 2023
Wilmington, Delaware

Respectfully submitted,

**POTTER ANDERSON & CORROON LLP**

*/s/ Jeremy W. Ryan*
Jeremy W. Ryan (No. 4057)
Kevin R. Shannon (No. 3137)
Andrew L. Brown (No. 6766)
1313 N. Market Street, 6th Floor
Wilmington, DE 19801-6108
Telephone: (302) 984-6108
Facsimile: (302) 658-1192
E-mail: jryan@potteranderson.com
        kshannon@potteranderson.com
        abrown@potteranderson.com

-and-

**LATHAM & WATKINS LLP**
James E. Brandt (admitted *pro hac vice*)
Suzzanne Uhland (admitted *pro hac vice*)
Hugh Murtagh (admitted *pro hac vice*)
1271 Avenue of the Americas
New York, New York 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864
Email: james.brandt@lw.com
        suzzanne.uhland@lw.com
        hugh.murtagh@lw.com

Michael J. Reiss (admitted *pro hac vice*)
355 S. Grand Avenue, Suite 100
Los Angeles, CA 90071
Telephone: (213) 485-1234
Facsimile: (213) 891-8763
Email: michael.reiss@lw.com

Michael E. Bern (admitted *pro hac vice*)
555 11th St. NW
Washington, DC 20004
Telephone: (202) 637-2200
Facsimile: (202) 637-2201
Email: michael.bern@lw.com

*Attorneys for K5 Defendants Michael Kives, Bryan Baum, K5 Global
Holdings, LLC, K5 Global Technology, LLC, MBK Capital, LP - Series T,
K5 Global Growth Co-Invest I GP, LLC, K5 Global Growth Fund I GP,
LLC, K5 Global Ventures, LLC, Mount Olympus Capital, LP, Mount
Olympus Capital, LLC, K5 Global Growth Fund II, LP, K5 Global Growth
Fund II GP, LLC, K5X Fund I, LP, and K5X Fund I, LLC*

# EXHIBIT A

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FTX TRADING LTD, *et al.*,[1] | Case No. 22-11068 (JTD) |
| Debtors. | (Jointly Administered) |
| | |
| ALAMEDA RESEARCH LTD. and CLIFTON BAY INVESTMENTS LLC f/k/a ALAMEDA RESEARCH VENTURES LLC, | |
| Plaintiffs, | Adv. Pro. No. 23-50411 (JTD) |
| v. | |
| MICHAEL KIVES, BRYAN BAUM, K5 GLOBAL HOLDINGS LLC, K5 GLOBAL TECHNOLOGY LLC, MBK CAPITAL LP SERIES T, K5 GROWTH CO-INVEST I GP LLC, K5 GLOBAL GROWTH FUND I GP LLC, K5 GLOBAL VENTURES LLC, MOUNT OLYMPUS CAPITAL LP, MOUNT OLYMPUS CAPITAL LLC, K5 GLOBAL GROWTH FUND II LP, K5 GLOBAL GROWTH FUND II GP LLC, K5X FUND I LP, K5X FUND I LLC, and SGN ALBANY LLC, | |
| Defendants. | |

## ORDER GRANTING THE K5 DEFENDANTS' MOTION TO STAY ADVERSARY PROCEEDING PENDING CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively.  Due to the large number of debtor entities in these Chapter 11 Cases (the "Debtors"), a complete list of Debtors and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX.  The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

Upon consideration of the *K5 Defendants'[2] Motion to Stay Adversary Proceeding Pending Confirmation of Debtors' Chapter 11 Plan* (the "<u>Motion</u>"), pursuant to the Court's inherent power to control the causes on its docket; and upon consideration of any opposition submitted in response thereto; and due and sufficient notice of the Motion having been provided under the particular circumstances, and it appearing that no other or further notice need be provided; and the Court having found upon review of the submissions by the parties that sufficient cause exists in support of the relief requested by the Motion;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that:

1.      The Motion is GRANTED.

2.      This adversary proceeding is stayed pending confirmation of a Chapter 11 Plan.

---

[2] Capitalized terms used, but not otherwise defined herein, shall have the meaning ascribed to them in the Motion.

2