# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re<br><br>FTX TRADING LTD, *et al.*,[1]<br><br>    Debtors. | Chapter 11<br><br>Case No. 22-11068 (JTD)<br><br>(Jointly Administered) |
| ALAMEDA RESEARCH LTD. and CLIFTON BAY INVESTMENTS LLC f/k/a ALAMEDA RESEARCH VENTURES LLC,<br><br>    Plaintiffs,<br><br>v.<br><br>MICHAEL KIVES, BRYAN BAUM, K5 GLOBAL HOLDINGS LLC, K5 GLOBAL TECHNOLOGY LLC, MBK CAPITAL LP SERIES T, K5 GROWTH CO-INVEST I GP LLC, K5 GLOBAL GROWTH FUND I GP LLC, K5 GLOBAL VENTURES LLC, MOUNT OLYMPUS CAPITAL LP, MOUNT OLYMPUS CAPITAL LLC, K5 GLOBAL GROWTH FUND II LP, K5 GLOBAL GROWTH FUND II GP LLC, K5X FUND I LP, K5X FUND I LLC, and SGN ALBANY LLC,<br><br>    Defendants. | Adv. Pro. No. 23-50411 (JTD) |

**K5 DEFENDANTS' REPLY IN SUPPORT OF THE MOTION TO STAY ADVERSARY PROCEEDING PENDING CONFIRMATION OF DEBTORS' CHAPTER 11 PLAN**

---

[1] The last four digits of FTX Trading Ltd.'s and Alameda Research LLC's tax identification numbers are 3288 and 4063, respectively. Due to the large number of debtor entities in these Chapter 11 Cases (the "Debtors"), a complete list of Debtors and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of Debtors' claims and noticing agent at https://cases.ra.kroll.com/FTX. The principal place of business of Debtor Emergent Fidelity Technologies Ltd is Unit 3B, Bryson's Commercial Complex, Friars Hill Road, St. John's, Antigua and Barbuda.

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................1

ARGUMENT ........................................................................................................................2

    A.    Plaintiffs' Opposition Confirms That Their Claims Predicated On Insolvency Are—At Best—Premature ...................................................................2

    B.    Plaintiffs Do Not Adequately Respond To The Myriad Other Considerations Weighing In Favor Of A Stay ........................................................6

    C.    Plaintiffs' Remaining Arguments Against A Stay Are Meritless ...........................9

CONCLUSION....................................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Alecto Healthcare Servs, LLC*,
  No. 23-10787 (JKS) (Bankr. D. Del. July 14, 2023) ...............................................................3

*In re Carmel*,
  Adv. Proc. No. 18-01331-MAM, 2019 WL 1110823 (Bankr. S.D. Fla. Mar. 8, 2019) ..........10

*In re EMS Fin. Servs., LLC*,
  Adv. No. 12-8221-AST, 2013 WL 64755 (Bankr. E.D.N.Y. Jan. 4, 2013) .......................5, 10

*In re FF Fund I, LP*,
  Adv. No. 22-01017-LMI, 2022 WL 3639536 (Bankr. S.D. Fla. Aug. 23, 2022) ......................8

*In re FTX Trading Ltd.*,
  No. 22-11068 (JTD) (Dec. 20, 2022) ........................................................................................4

*In re Green Field Energy Servs., Inc.*,
  Adv. Pro. No. 15-50262(KG), 2017 WL 2729065 (Bankr. D. Del. 2017) ...............................9

*In re Greenpoint Tactical Income Fund, LLC*,
  Adv. Pro. No. 20-2005-GMH, 2022 WL 2792016 (Bankr. E.D. Wisc. July 15, 2022) ......5, 10

*In re HH Liquidation, LLC*,
  590 B.R. 211 (Bankr. D. Del. 2018) .........................................................................................4

*In re Optical Techs., Inc.*,
  325 B.R. 651 (Bankr. M.D. Fla. 2005) ...................................................................................10

Defendants Michael Kives, Bryan Baum, K5 Global Holdings, LLC, K5 Global Technology, LLC, MBK Capital, LP - Series T, K5 Global Growth Co-Invest I GP, LLC, K5 Global Growth Fund I GP, LLC, K5 Global Ventures, LLC, Mount Olympus Capital, LP, Mount Olympus Capital, LLC, K5 Global Growth Fund II, LP, K5 Global Growth Fund II GP, LLC, K5X Fund I, LP, and K5X Fund I, LLC (collectively, the "K5 Defendants"), defendants to the above-captioned adversary proceeding (the "Adversary Proceeding"), file this reply in support of the *K5 Defendants' Motion to Stay Adversary Proceeding Pending Confirmation of Debtors' Chapter 11 Plan* [Adv. Pro. D.I. 38] (the "Motion" or "Mot."). In support of this reply, the K5 Defendants respectfully state as follows:

**INTRODUCTION**

Plaintiffs'[2] Opposition ("Opposition" or "Opp'n") [Adv. Pro. D.I. 47] reads more like a response to the K5 Defendants' Motion to Dismiss [Adv. Pro. D.I. 32] than their Motion for a Stay. Plaintiffs' primary retort is to argue time and again that their own sworn schedules do not conclusively admit to their solvency because the schedules contain enough caveats and disclaimers to render them meaningless at this stage of the bankruptcy proceedings. Whether Plaintiffs have sufficiently pled insolvency, however, is an issue for the K5 Defendants' Motion to Dismiss. What matters for purposes of *this Motion* is that Plaintiffs' own statements establish that *they cannot in good faith claim—even today—that they were insolvent at the time of the transfers at issue or that they continue to be insolvent today.* Indeed, as of this moment, Plaintiffs tacitly admit that they cannot take a conclusive position, and really have no idea, about the most basic facts surrounding their assets and liabilities—the foundation of a solvency analysis—and have no idea when they

---

[2] Capitalized terms not defined herein shall have the same meaning attributed to them in the Motion.

1

might be able to take such a position. In that abnormal posture, proceeding with this action is a waste of the parties' and this Court's time and resources.

Other considerations reinforce that a stay is warranted. Plaintiffs argue that "it is impossible to know now" whether an investigation by the U.S. Trustee's ("UST") examiner would overlap or encompass facts at issue in this case, should the UST prevail on appeal. Opp'n at 13. But that uncertainty—and the risk of duplicative investigation—weigh in favor of granting a stay, not against it. Plaintiffs also insist that a stay would prevent them from recovering now the value of their investments. But Plaintiffs *already* have all of the rights and interests in their investments (if they did not have them already), having sought and obtained a default judgment against nominal defendant SGN Albany LLC ("SGN"). A stay would thus benefit all parties by affording Plaintiffs an opportunity to work with the K5 Defendants to maximize the value of those assets outside of court, rather than waste the parties' resources through this unnecessary litigation.

Because Plaintiffs' admissions establish they cannot yet say if they were or are insolvent and already now inarguably enjoy the value of their investments, this litigation is wasteful and—at best—premature. The Motion should be granted.

## ARGUMENT

### A. Plaintiffs' Opposition Confirms That Their Claims Predicated On Insolvency Are—At Best—Premature

As the Motion explained, Plaintiffs' "rapidly evolving view of their assets and liabilities," and inability to attest to their insolvency either at the time of the transfers or today, renders this action premature. Mot. at 4–5. Because Plaintiffs' admissions establish that they are currently unaware whether they were insolvent on the Petition Date, insolvent on the dates of the transfers, or are currently insolvent, it would be far more efficient to stay this matter until Plaintiffs know whether they can plead in good faith the basic prerequisites of their claims.

2

In their Opposition, Plaintiffs concede that their "preference and fraudulent conveyance claims turn"—at minimum—"on Plaintiffs' insolvency at the time of the challenged transfers." Opp'n at 10. Plaintiffs do not contest, moreover, that at the time they filed their Complaint against the K5 Defendants, their own sworn statements made under penalty of perjury in their Summaries of Assets and Liabilities for Non-Individuals (Official Form206Sum) ("SOALs"), attested that both Plaintiffs had more assets than liabilities at the time of the Chapter 11 Petition—even *after* the supposed transfers at issue. *See* Mot. at 3–4. Nor do Plaintiffs challenge that their current SOALs continue to attest that Plaintiff Alameda Research had more assets than liabilities as of the Petition Date, or that the current draft plan of reorganization would seemingly leave Plaintiff Alameda Ventures with no impaired creditors. *See id.* at 4.

Instead, Plaintiffs devote much of their Opposition to contesting whether the statements in their SOALs constitute dispositive "admissions of Plaintiffs' solvency." Opp'n at 8. To that end, Plaintiffs rely heavily on boilerplate disclaimers in the global notes to their SOALs and argue that the "calculation of assets and liabilities in the Schedules differs from the treatment of assets and liabilities for purposes of a solvency analysis." Opp'n at 8, 11–12. To be sure, Plaintiffs' arguments are dubious, at least in the view of the U.S. Department of Justice. *See, e.g.*, Ex. 1, Tr. of 341 Mtg. at 5:21–6:6, *In re Alecto Healthcare Servs, LLC*, No. 23-10787 (JKS) (Bankr. D. Del. July 14, 2023) (statement of UST that "I do want to state it is our United States Trustee's position that these global notes can be very helpful, but they're neither required nor authorized by the rules. And the schedules and statements need to stand on their own. In addition, any attempt to change the legal effect of the schedules or statements unilaterally by making a statement in the schedule in the global notes does not have any force of law. The schedules and statements are what they

3

are and will have whatever effect they will have under applicable law.").[3] There will be plenty of time to address the merits of those arguments in the briefing on the K5 Defendants' Motion to Dismiss. For purposes of *this Motion*, however, Plaintiffs' arguments reinforce why the Motion should be granted.

To begin with, Plaintiffs' focus on their solvency at the time of the transfers ignores whether Plaintiffs are solvent *today*. As the K5 Defendants explained in both the Motion and their Motion to Dismiss, in order "to assert the majority of Plaintiffs' claims . . . the Plaintiffs must be insolvent such that their creditors, not Debtors, may benefit from this action." Mot. at 11 (citing *In re HH Liquidation, LLC*, 590 B.R. 211, 262 (Bankr. D. Del. 2018)). Unless and until it can be determined that Plaintiffs' claims, even if proven, would actually benefit Plaintiffs' creditors, this case should be stayed.[4] Plaintiffs do not argue otherwise.

The upshot of Plaintiffs' long discussion is instead to say: whatever we admitted in our schedules is not dispositive of our insolvency at the time of the transfers (or today) because assessing insolvency is complicated, ongoing, may vary by date, and is not resolved by a comparison of the determined assets and liabilities in our schedules. *See* Opp'n at 8–12. But even if all of that were true (and it is not), that only would underscore why this litigation is premature. Those arguments admit that Plaintiffs do not currently possess sufficient information to allege whether they were or are solvent. Indeed, Plaintiffs' concession that "[r]econstruction of the Debtors' balance sheets is an *ongoing*, bottom-up exercise that continues to require significant

---

[3] The UST has not had an opportunity to make a similar statement at a 341 meeting of the Debtors, because their 341 meeting was continued in light of the Debtors' delayed filing of their schedules. *See* Ex. 2, Tr. of 341 Mtg. at 105:5–8, *In re FTX Trading Ltd.*, No. 22-11068 (JTD) (Dec. 20, 2022).

[4] Alternatively, as argued in the K5 Defendants' Motion to Dismiss, Plaintiffs' failure to allege this statutory predicate for its avoidance claims requires dismissal.

effort by professionals" makes clear that the rapidly evolving accounting of Plaintiffs' assets and liabilities leaves them unable to argue anything definitive regarding solvency. Opp'n at 10 (quoting *First Interim Report of John. J. Ray III to the Independent Directors* at 14 [D.I. 1242]) (emphasis added).

Plaintiffs' position that this counsels *against* a stay, rather than in its favor, makes little sense. Courts routinely stay adversary proceedings in the analogous circumstance where resolution of critical factual questions would result in a more efficient litigation. *See, e.g.*, *In re EMS Fin. Servs., LLC*, Adv. No. 12-8221-AST, 2013 WL 64755, at *8 (Bankr. E.D.N.Y. Jan. 4, 2013) (staying prematurely brought adversary proceeding, because it "would be an inappropriate use of judicial resources for this Court to determine" factual disputes that would be resolved in a concurrent proceeding); *see also In re Greenpoint Tactical Income Fund, LLC*, Adv. Pro. No. 20-2005-GMH, 2022 WL 2792016, at *5 (Bankr. E.D. Wisc. July 15, 2022) ("Arguably, perhaps, the proceeding is not yet ripe . . . [because a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated or indeed may not occur at all . . . . Under these circumstances, a court may stay the proceeding until it is ripe for decision." (internal quotation omitted)).

Ultimately, despite the length of their response, Plaintiffs do not argue, or point to facts to show, that either Plaintiff is (1) currently insolvent or (2) was insolvent at the time of the transfers. Indeed, Plaintiff Alameda Research's current SOAL shows that its assets exceed its liabilities. Even if the SOALs are not dispositive of insolvency, as Plaintiffs claim, they illustrate that Plaintiffs, at present, do not even have a good faith basis to assert that Alameda Research was insolvent as of the Petition Date. Moreover, by their own admissions, neither Plaintiff knows

whether it is currently solvent. Therefore, neither Plaintiff knows whether recovery of the Transfers would benefit any creditor.

It makes little sense to allow this Adversary Proceeding to continue where Plaintiffs cannot in good faith allege the elements of their causes of action. The Court should thus stay this Adversary Proceeding until after confirmation of Plaintiffs' Chapter 11 Plan, when it will likely be much more clear whether Plaintiffs can bring the action.

### B.  Plaintiffs Do Not Adequately Respond To The Myriad Other Considerations Weighing In Favor Of A Stay

In the Motion, the K5 Defendants argued that "myriad outstanding issues" also weighed against proceeding now with this litigation, including the Third Circuit's ruling on the UST's appeal, the unavailability of key witnesses, and whether and how this Court's entry of default judgment against SGN affects this litigation. Mot. at 13–16. While Plaintiffs generally posit that none of these issues "provide[] a valid basis to stay the Adversary Proceeding," their explanations are unpersuasive. Opp'n at 13.

*First*, Plaintiffs insist that the Third Circuit's forthcoming resolution of the UST's appeal will have no effect on this proceeding, because "to the extent any future examiner did wish to investigate the fraudulent K5 and Mount Olympus Transactions, discovery in this Adversary Proceeding would only expedite and facilitate that investigation." Opp'n at 13. But that wholly conclusory assertion ignores the substantial risk that, should the Third Circuit hold that an examiner be appointed, the K5 Defendants and Debtors will be subjected to duplicative investigations and unnecessary costs. After all, the UST and its *amici* argue that any examiner should *independently* investigate the issues surrounding Sam Bankman-Fried's fraudulent acts, rather than rely on facts discovered by Debtors themselves. *See* Ex. 3, Br. for Appellant at 17, Case No. 23-2297, ECF No. 23 (3d Cir. Sep. 1, 2023) ("Having neutral examiners perform

6

investigations in large bankruptcies . . . serves the statutory goals of objectivity and transparency."); *see also* Ex. 4, Br. of Amici Curiae Law Profs. Supp. Appellant at 4–7, Case No. 23-2297, ECF No. 27 (3d Cir. Sep. 8, 2023) ("[T]he Bankruptcy Code forbids debtors from investigating themselves, and there are serious questions about the independence for these purposes of Debtors' counsel . . . [and] a properly targeted examination may help to bring the costs of this case under control." (internal citation omitted)). Indeed, an examiner may conclude that Plaintiffs were or are solvent, and that based on Plaintiffs' solvency, no causes of action which rely on insolvency can properly be asserted.

Plaintiffs also argue that "it is impossible to know now whether a not-yet-appointed examiner's investigation [would] encompass certain facts bearing on Plaintiffs' claims." Opp'n at 13 (internal quotation omitted). But that uncertainty weighs in favor of a stay, because it would allow for the imminent resolution of the UST's appeal and that uncertainty before imposing duplicative costs on the K5 Defendants (and ultimately Plaintiffs' estates). That consideration weighs particularly strongly in favor of a stay here because Plaintiffs themselves now admittedly hold rights and interests in the K5 Defendants; accordingly, the costs that would follow absent a stay will be imposed on parties on both sides of the v. in this case.

*Second*, Plaintiffs do not respond substantively to the K5 Defendants' argument that rushing to discovery without potential, key witnesses being available is wasteful and inefficient. Rather, they try to change the subject by criticizing the K5 Defendants for raising the argument after stipulating to the Scheduling Order. *See* Opp'n at 14. But Plaintiffs ignore that the K5 Defendants asked for a stay while negotiating the schedule for this case. *See* Decl. of James Brandt Supp. Mot. ¶¶ 3, 5, Ex. 2. Plaintiffs rejected that request, and while the K5 Defendants agreed to a schedule, pursuant to the process and timeline envisioned by the Local Rules, they did so while

7

expressly preserving their right to seek a stay.  Plaintiffs themselves concede, therefore, that the K5 Defendants did not waive their right to seek a stay by agreeing to the scheduling order.  Opp'n at 1, 14 n.13.  Plaintiffs' baseless procedural argument aside, the unavailability of a key witness in this case is reason alone to grant a stay.  *See, e.g.*, *In re FF Fund I, LP*, Adv. No. 22-01017-LMI, 2022 WL 3639536, at *3–5 (Bankr. S.D. Fla. Aug. 23, 2022) (granting stay where the debtors' principal, a key fraudulent transfer witness, was unavailable pending his criminal trial).  At minimum, it weighs in favor of a stay.

*Third*, Plaintiffs argue that this Court's entry of default judgment against SGN is no reason to stay the case, because "Plaintiffs did not file this action simply to step into the shoes of SGN Albany."  Opp'n at 13.  Yet again, Plaintiffs miss the mark.  Their Complaint was premised in part on the allegation that SGN, rather than Plaintiffs, enjoyed the value of Plaintiffs' investment.  *See, e.g.*, Compl. ¶ 81 ("[T]he K5 Transaction did not provide Alameda Ventures (which had no stake in SGN Albany), or Alameda Research Ltd., (which had a small minority stake in SGN Albany) with reasonably equivalent value.").  The K5 Defendants took the position that instead of pursuing this poorly-supported litigation, Plaintiffs would save everyone time and resources by pursuing an order in the bankruptcy court confirming their ownership of the investments at issue.  Plaintiffs rejected that suggestion, costing all involved significant resources.  Now, all parties agree, as they must, that following the Court's entry of default judgment, Plaintiffs enjoy "all of SGN Albany LLC's (i) rights and interests . . . that SGN Albany LLC acquired as a result of the K5 Transaction, and any proceeds thereof; and (ii) rights and interests . . . that SGN Albany LLC acquired as a

result of the Mount Olympus Transaction, and any proceeds thereof." Judgment by Default at 2–3, Adv. Pro. D.I. 48.[5]

The K5 Defendants have renewed their offer to assist Plaintiffs in maximizing the value of their investments consistent with Plaintiffs' rights and obligations under the applicable documents and law. Once again, pursuing the litigation now only risks devaluing some of the assets in the event of bad publicity, while guaranteeing the further waste of the parties' time and resources while that effort continues.

In all, Plaintiffs' Opposition fails to address the *gravamen* of the Motion: that in the unique procedural posture of this case—where Plaintiffs cannot actually attest to their insolvency or the value of their own assets—a stay is appropriate to avoid "needless litigation" and "administrative burn" that will "only reduce creditor recoveries." Mot. at 16. A stay will afford Plaintiffs time to maximize the value of their assets while myriad issues remain unresolved, including core questions of solvency and value that could moot or defeat Plaintiffs' claims. Rather than permit Plaintiffs to continue wasting the K5 Defendants' and the estates' resources, this Court should grant the motion to stay.

### C.     Plaintiffs' Remaining Arguments Against A Stay Are Meritless

Plaintiffs' remaining arguments against a stay are meritless. Plaintiffs first criticize the K5 Defendants for not addressing the familiar four-factor test that courts consider when evaluating a typical motion to stay pending resolution of a motion. *See* Opp'n at 14 (citing *In re Green Field Energy Servs., Inc.*, Adv. Pro. No. 15-50262(KG), 2017 WL 2729065, at *2 (Bankr. D. Del. 2017)). But Plaintiffs' attempt to shoehorn this Motion into that sort of stay request is

---

[5] As the K5 Defendants have elsewhere explained, the K5 Transaction and Mount Olympus Transaction were, in fact, one transaction.

9

unpersuasive. The Motion was clear: while the K5 Defendants' pending motions to dismiss and withdraw the reference provide context and weigh in favor of a stay, the K5 Defendants do *not* seek a stay on that basis alone. *See* Mot. at 5 n.5 ("The K5 Defendants do not argue that filing a motion to dismiss or to withdraw the reference, standing alone, justifies a stay. But the pendency of those motions provides additional context militating in favor of a stay given the other considerations addressed in this Motion."). Rather, the Motion to Stay is principally premised upon this entire action being premature (and unnecessary) in light of the unresolved, rapidly evolving, and uncertain nature of key issues in this case.

In that sense, the Motion is more akin to routinely granted motions to stay adversary proceedings pending the resolution of related cases that will resolve key factual questions undergirding the claims at issue, and thereby streamline litigation. *See, e.g.*, *In re EMS Fin. Servs., LLC*, 2013 WL 64755, at *9 (staying adversary proceeding pending judgment in concurrent proceedings); *In re Greenpoint Tactical Income Fund, LLC*, 2022 WL 2792016, at *5 (staying adversary proceeding pending district court judgment, which would determine whether plaintiff had a viable claim in the adversary proceeding); *In re Carmel*, Adv. Proc. No. 18-01331-MAM, 2019 WL 1110823, at *4 (Bankr. S.D. Fla. Mar. 8, 2019) ("[T]he Probate Court's determination regarding whether Debtor fraudulently induced Plaintiff to represent him in the Probate Case will likely be highly pertinent to this Court's determination of [Plaintiff's] claims."); *In re Optical Techs., Inc.*, 325 B.R. 651, 652 (Bankr. M.D. Fla. 2005) ("[F]or the sake of judicial economy and for the sake of avoiding the possibility that the Eleventh Circuit will decide contrary to what this Court may decide which would, no doubt, spawn additional wasteful appeals, it is appropriate [to abate the case].").

10

Plaintiffs also repeatedly suggest that a stay here would be against the public interest because it would prevent Plaintiffs from recovering the value of their investments. *See* Opp'n at 17–18. Nonsense. As noted above, Plaintiffs *already* are in possession of the rights and interests in their investments, having sought and obtained a default judgment against SGN. And the K5 Defendants have offered to help maximize the value of those assets without needlessly wasting additional resources on this litigation. Indeed, a stay *would preserve and enhance the value of Plaintiffs' rights*, because it would allow for creditor recovery (to the extent there even are any such creditors) without the unnecessary administrative burn that a prolonged litigation would entail. Given the context, there is no reason whatsoever to find that the public interest (or, indeed, *Plaintiffs'* interest) weighs against a stay.

## CONCLUSION

For the foregoing reasons, the K5 Defendants respectfully request that the Court grant the Motion and enter an order staying the Adversary Proceeding pending this Court's confirmation of a Chapter 11 Plan.

*[Remainder of page intentionally left blank]*

| | |
|---|---|
| Dated: October 2, 2023<br>Wilmington, Delaware | Respectfully submitted,<br><br>**POTTER ANDERSON & CORROON LLP**<br><br>*/s/ Jeremy W. Ryan*<br>Jeremy W. Ryan (No. 4057)<br>Kevin R. Shannon (No. 3137)<br>Andrew L. Brown (No. 6766)<br>1313 N. Market Street, 6th Floor<br>Wilmington, DE 19801-6108<br>Telephone: (302) 984-6108<br>Facsimile: (302) 658-1192<br>E-mail: jryan@potteranderson.com<br>       kshannon@potteranderson.com<br>       abrown@potteranderson.com<br><br>-and-<br><br>**LATHAM & WATKINS LLP**<br>James E. Brandt (admitted *pro hac vice*)<br>Suzzanne Uhland (admitted *pro hac vice*)<br>Hugh Murtagh (admitted *pro hac vice*)<br>1271 Avenue of the Americas<br>New York, New York 10020<br>Telephone: (212) 906-1200<br>Facsimile: (212) 751-4864<br>Email: james.brandt@lw.com<br>       suzzanne.uhland@lw.com<br>       hugh.murtagh@lw.com<br><br>Michael J. Reiss (admitted *pro hac vice*)<br>355 S. Grand Avenue, Suite 100<br>Los Angeles, CA 90071<br>Telephone: (213) 485-1234<br>Facsimile: (213) 891-8763<br>Email: michael.reiss@lw.com<br><br>Michael E. Bern (admitted *pro hac vice*)<br>555 11th St. NW<br>Washington, DC 20004<br>Telephone: (202) 637-2200<br>Facsimile: (202) 637-2201<br>Email: michael.bern@lw.com<br><br>*Attorneys for K5 Defendants Michael Kives, Bryan Baum, K5 Global Holdings, LLC, K5 Global Technology, LLC, MBK Capital, LP - Series T, K5 Global Growth Co-Invest I GP, LLC, K5 Global Growth Fund I GP, LLC, K5 Global Ventures, LLC, Mount Olympus Capital, LP, Mount Olympus Capital, LLC, K5 Global Growth Fund II, LP, K5 Global Growth Fund II GP, LLC, K5X Fund I, LP, and K5X Fund I, LLC* |